**K.W.S. MANUFACTURING COMPANY, INC., et al., Appellants,**

v.

**Samuel L. McMAHON, Appellee.**

No. 5857.

Court of Civil Appeals of Texas, Waco.

April 20, 1978.

Rehearing Denied May 11, 1978.

Sam J. Day and Carter L. Ferguson, Mc-Donald, Sanders, Ginsburg, Phillips, Maddox & Newkirk, Fort Worth, for appellants.

Robert J. Wilson, Burleson, for appellee.

## OPINION

JAMES, Justice.

This is a suit for 5% of the stock of a corporation based upon actionable fraud, and for wrongful termination of an employment agreement. Jury verdict and trial court's judgment were in favor of Plaintiff. We reform the trial court's judgment, and as reformed, we affirm same.

Plaintiff-Appellee Samuel L. McMahon brought this suit against Defendant-Appellants K.W.S. Manufacturing Co., Inc., a corporation, and Floyd W. Watkins, Chesley C. Sharp, and Anton Krsak, alleging Plaintiff was entitled to a 5% ownership interest in K.W.S. Manufacturing Co., Inc., and for actual and exemplary damages for fraud on the part of the individual Defendants Watkins, Sharp, and Krsak, whereby said Defendants allegedly induced Plaintiff to contribute time, materials, and money toward helping said Defendants set up the K.W.S. Corporation, and for further actual and exemplary damages for wrongful termination of Plaintiff's employment.

Trial was had to a jury which found:

(1) There was an agreement between Plaintiff McMahon and Defendants Watkins, Krsak, and Sharp providing that Plaintiff was to acquire five percent ownership in the company to be formed as a result of their efforts prior to February 23, 1972 (said date being the day K.W.S. was incorporated).

(2) Said agreement was breached by Defendants on March 4, 1975.

(3) The value of said 5% ownership on said date of Defendants' breach was $12,-500.00.

(4) Said three individual Defendants Watkins, Krsak, and Sharp, prior to incorporation of K.W.S. made representations to Plaintiff McMahon that if he (McMahon) furnished time, labor, and materials, he would be given a 5% ownership interest in said corporation.

(5) Plaintiff relied upon such representation in performing the labor and furnishing the supplies on the project in question.

(6) Plaintiff has been damaged as a result of his reliance upon such representations that he would receive 5% interest for the time, labor, and contributions which he supplied;

(7) In the amount of $20,000.00 (actual damages);

(8) Defendants Watkins, Krsak, and Sharp acted with malice toward Plaintiff in making such representation. "Malice" was defined as "ill will, bad or evil motive, or such gross indifference to the rights of others as will amount to a willful or wanton act done intentionally or without just cause or excuse."

(9) $5,000.00 punitive damages should be awarded to Plaintiff against Watkins, Krsak, and Sharp for such representation.

(10) There was an agreement between Plaintiff and Defendant Watkins, Krsak and Sharp providing that Plaintiff would

have employment with the company being formed for an indefinite period of time.

(11) Plaintiff is entitled to $6,000.00 actual damages as a result of his (Plaintiff's) termination of employment.

(12) That K.W.S., Watkins, Krsak, and Sharp acted with malice toward Plaintiff McMahon in terminating his employment.

(13) Plaintiff is entitled to $15,000.00 punitive damages against all four Defendants for such termination of employment.

Based upon the jury verdict the trial court entered judgment in favor of Plaintiff McMahon against Krsak, Watkins and Sharp, jointly and severally, in the amount of $37,500.00 for actual and exemplary damages; and in addition thereto, Plaintiff was awarded judgment against K.W.S. and said three above-named individual Defendants, jointly and severally, for $21,000.00 for actual and exemplary damages. From this judgment the four Defendants appeal.

Appellants' points one and two assert there is no evidence, and insufficient evidence that at the time the Defendants made the representations to Plaintiff (to the effect that Plaintiff would receive 5% ownership of the corporation to be formed), that Defendants did not intend to give Plaintiff such 5% ownership interest. We overrule these contentions.

Defendant K.W.S. Manufacturing Co., Inc. (hereinafter called "KWS") was incorporated on February 23, 1972. The company was formed and owned by the three individual Defendants, Watkins, Sharp, and Krsak. KWS specializes in the manufacture of screw conveyors or bulk material handling equipment. Prior to the incorporation of KWS, Watkins, Sharp and Krsak worked for Thomas Conveyor, a company also dealing in bulk material handling equipment. It was at Thomas Conveyor that each Defendant learned expertise in the various aspects of the screw conveyor business.

In the latter part of 1969 and early 1970, the three individual Defendants were contemplating the formation of their own business. Plaintiff McMahon was a neighbor of Defendant Krsak, and Plaintiff and the three individual Defendants began working part-time at nights and on weekends to set up this new business which was to manufacture screw conveyor equipment. Plaintiff had a full-time job with Loma Plastics, and was experienced in electrical and hydraulic equipment and machinery, which skill and know-how was needed for setting up this screw conveyor manufacturing operation. Plaintiff testified that he had been told by Watkins, Krsak, and Sharp that if he would help them set up and establish this business, he would receive a 5% ownership share of the business and a full-time job with the company the same as the three individual Defendants. Plaintiff testified that pursuant to this promise he worked a substantial amount of time, furnished some needed equipment, and paid in some money to help the venture get started. This new business was in direct competition with Thomas Conveyor, the firm by whom Watkins, Krsak and Sharp were employed. After a while, the Thomas Conveyor people found out about this new business, and thereupon fired Watkins, Krsak, and Sharp. Then, after this, said three individual Defendants began working full time in the new business; and on February 23, 1972, they incorporated this business under the Corporate name of KWS Manufacturing Co., Inc. One hundred shares of stock were issued, all of which was held by Watkins, Krsak, and Sharp.

Plaintiff-Appellee contends that by the jury's answers to special issues 4 through 9 inclusive, he has established the factual basis or elements for a judgment against Watkins, Krsak, and Sharp for actionable fraud. These jury findings establish (1) the Defendants' representation to Plaintiff that if he would furnish time, labor and materials as hereinabove mentioned, that they would give him 5% ownership of the company when it was formed; (2) that Plaintiff relied upon such representation, and (3) has been damaged as a result of such reliance, (4) in the amount of $20,000.00 actual damages; (5) the Defendants acted with malice toward Plaintiff in making such representation, and (6) Plaintiff is entitled to $5,000.00 punitive damages therefor.

However, Defendant-Appellants assert that Plaintiff-Appellee has failed to establish one essential element of his cause of action for actionable fraud against them, to wit: the representation in question made by the Defendants is a promise of an act to be performed in the future (as opposed to a misrepresentation of a past or present existing fact). Appellants argue that in such a case it is not a fraudulent misrepresentation unless Plaintiff-Appellee established that at the very time the Defendants made the promise they did not intend to perform it. We agree with Appellants' contention that this is a correct statement of the law. Plaintiff-Appellee had the burden of establishing this fact as a part of his cause of action for actionable fraud. See *Precision Motors v. Cornish* (Dallas, Tex.Civ.App., 1967) 413 S.W.2d 752, 756, NRE; *Morgan v. Box* (Dallas, Tex.Civ.App., 1969) 449 S.W.2d 499, 504, no writ; *Citizens Standard Life Ins. Co. v. Gilley* (Dallas, Tex.Civ.App., 1975) 521 S.W.2d 354, 356, no writ; *Ryan Mortgage Investors v. Lehmann* (Beaumont, Tex.Civ.App., 1976) 544 S.W.2d 456, 461, writ dismissed; 25 Tex.Jur.2d "Fraud and Deceit," Section 45, page 685.

In the case at bar, the burden of proof was upon Plaintiff-Appellee to establish that the Defendants did not intend, at the time the representation was made, to perform the promise to give Plaintiff-Appellee the 5% ownership in KWS at the future time when the corporation shall have been formed. The Plaintiff did not request an issue to this effect, but neither did the Defendants object to the failure of the trial court to submit such an issue. See Rule 279, Texas Rules of Civil Procedure. Under this state of the record, the trial court was authorized to make an implied finding to the effect that the Defendants did not intend, at the time the representation was made, to perform the promise to give the Plaintiff 5% of the stock of KWS, if there was evidence in the record to support such finding. *Stanfield v. O'Boyle* (Tex.1971) 462 S.W.2d 270, and *Bond v. Duren* (Waco, Tex.Civ.App., 1975) 520 S.W.2d 460, NRE, hold that if the defendant denies he made the alleged promise which was not performed, that this is some probative evidence to support a jury finding (or trial court finding) that the defendant had no intention of performing at the time he made the promise.

Here, there was evidence that the Defendants made the promise, and also evidence that the Defendants denied making the promise. Thus, there was a fact issue presented which the trial court was authorized to resolve, and did resolve, by his implied finding in Plaintiff's favor to the effect that Defendants had no intention to perform at the time they made the promise to Plaintiff.

Therefore, we hold that the jury's answers to special issues numbers 3, 4, 5, 6, 8, and 9, coupled with the trial court's implied finding as hereinabove described, establish Plaintiff's right to recover upon the theory of actionable fraud against the three individual Defendants Watkins, Krsak, and Sharp, the amount of $12,500.00 for the value of 5% of the corporate stock plus the $5,000.00 exemplary damages found by the jury in answer to special issue number 9.

Plaintiff-Appellee asserts that he has not sued upon a breach of contract theory, and of course would not be entitled to double recovery for the value of 5% of the stock by suing upon theories of both actionable fraud (tort) and breach of contract.

We now come to the "termination of employment" portion of this case. In answer to special issues 10, 11, 12, and 13 the jury found: (10) there was an agreement between Plaintiff and the three individual Defendants providing Plaintiff would have employment with the company for an indefinite time; (11) Plaintiff is entitled to $6,000.00 actual damages as result of being fired; (12) KWS and the three individual Defendants acted with malice toward Plaintiff in terminating his employment; and (13) Plaintiff is entitled to $15,000.00 punitive damages against all four Defendants for firing Plaintiff.

Appellants attack the jury's findings to the above four special issues by contending: (1) no pleadings to support the submission of issues 10 and 11; (2) punitive damages are not authorized for breach of contract; (3) no evidence of malice; and (4) factual insufficiency of evidence to support finding of malice and the punitive damages. We overrule all these contentions.

In our opinion the pleadings of Plaintiff are sufficient. The Defendants filed no special exceptions to Plaintiff's pleadings. In the absence of special exceptions, the petition will be construed liberally in the pleader's favor, and pleadings are sufficient under our Rules of Civil Procedure if they give fair and adequate notice to the adversary. Rule 45, Texas Rules of Civil Procedure; *Stone v. Lawyers Title Ins. Corp.,* (Tex.1977) 554 S.W.2d 183, 186, and the cases cited therein.

Appellants assert error of the trial court in submitting issues 12 (malice) and 13 (punitive damages), on the ground that punitive damages are not authorized for breach of contract. This rule of law is true as far as it goes, but is not the complete rule of law that applies to the case at bar. Punitive or exemplary damages cannot be recovered for a simple breach of contract, where the breach is not accompanied by a tort, even though the breach is brought about capriciously and with malice. *A. L. Carter Lumber Co. v. Saide* (1943) 140 Tex. 523, 168 S.W.2d 629; *Graham v. Turner* (Waco, Tex.Civ.App., 1971) 472 S.W.2d 831, 838, no writ; *Boswell v. Hughes* (El Paso, Tex.Civ.App., 1973) 491 S.W.2d 762, NRE. However, punitive damages are allowable in a breach of contract situation if a distinct tort is alleged and proved, independent of the contract action. A tort may grow out of, make a part of, or be coincident with a contract. So the same state of facts between the same parties, may admit of an action ex contractu or ex delicto. *McDonough v. Zamora* (San Antonio, Tex.Civ. App., 1960) 338 S.W.2d 507, 513, 514, NRE, citing *Shirley v. Waco Tap R. Co.* (1889) 78 Tex. 131, 10 S.W. 543, 549.

In the case at bar, the jury's findings established the existence of an agreement between Plaintiff and the Defendants providing that Plaintiff would have employment with KWS for an indefinite period of time. On the strength of this agreement, accompanied by the Defendants' promise to him of a part ownership in the business, Plaintiff quit his full-time job at Loma Plastics and began working full-time for KWS in August 1973, where he worked full-time until he was fired by the Defendants on March 4, 1975. The reason Plaintiff McMahon was fired is undisputed and was this: Shortly before he was terminated, Plaintiff McMahon had strongly insisted upon being given his 5% of the stock of KWS that Defendants had promised him. For about three years since the time KWS was formed some of the Defendants had led Plaintiff McMahon to believe that they were going to give him his stock, but with one excuse after another during this time the Defendants delayed and put him off. When Plaintiff finally employed an attorney and threatened to file suit to cause Defendants to make good on their promise, that is when the Defendants fired Plaintiff, causing Plaintiff to have to find another job paying considerably less money than he had been making. The Defendants all admit that this is the only reason they fired Plaintiff, to wit, because of his insistence upon the 5% stock ownership. Appellants say there is no evidence, and insufficient evidence of malice. We are of the opinion that there is plenty of evidence of malice. From 1972 until 1976, the annual salaries drawn by the three individual Defendants from KWS had grown from $4,000.00 each to $67,000.00 each, plus $24,000.00 each held by them in profit-sharing. The gross sales of KWS had grown from $250,000.00 in 1972 to almost $2,000,000.00 in 1976, and the employment of KWS had grown from three people in 1972 to fifty-five in 1976. The stockholder's equity (all owned by Watkins, Krsak, and Sharp) was approximately $350,-000.00 in 1976. On this basis, Plaintiff's five shares of stock would have been worth $17,500.00, while KWS had a great growth and earnings potential, as all admitted. At

the time Plaintiff was fired by the Defendants, he was making a laboring man's wage of about $260.00 per week, and was told at the time of firing by Defendants that he would also lose his retirement with KWS which was worth a little over $2,000.00. Defendants told Plaintiff he could keep his job and retirement benefits if he would "just shut up about the 5%."

In short, the Defendants were harsh and oppressive toward Plaintiff in connection with this patently wrongful termination of Plaintiff's employment. This wrongful termination was a breach of contract, but it was also a tort which authorized the award of punitive damages.

Appellants have other points and contentions, which we have carefully considered, and all of which we overrule as being without merit.

Judgment of the trial court is hereby reformed so as to provide recovery by Plaintiff-Appellee as follows:

(1) Plaintiff-Appellee McMahon is hereby granted a judgment against Defendant-Appellants Krsak, Watkins and Sharp, jointly and severally, for the sum of $17,500.00 for his actual and exemplary damages;

(2) Plaintiff-Appellee McMahon is further granted judgment against KWS Manufacturing Co., Inc., Krsak, Watkins, and Sharp, jointly and severally, for $21,000.00, for his actual and exemplary damages. (This portion is unchanged from the original judgment).

(3) Costs of this appeal are taxed one-fourth (¼th) against Plaintiff-Appellee McMahon and three-fourths (¾ths) against all four Defendant-Appellants, jointly and severally.

The trial court's judgment is hereby reformed in the particulars hereinabove described, and as reformed, is affirmed.

REFORMED AND AFFIRMED.