**CARNATION COMPANY, Petitioner,**

v.

**Willie Ellis BORNER, Respondent.**

**No. B–8862.**

Supreme Court of Texas.

Dec. 10, 1980.

Rehearing Denied Feb. 4, 1981.

Fulbright & Jaworski, A. J. Harper, II and A. Martin Wickliff, Jr., Houston, P. Anthony Burnham, Los Angeles, Cal., for petitioner.

Leebron & Robinson, Laron D. Robinson and W. Michael Leebron, II, Houston, for respondent.

CAMPBELL, Justice.

This is a wrongful termination case. Trial was to a jury which found that Defendant Carnation wrongfully and maliciously terminated its employee, Plaintiff Borner, under Article 8307c. The trial court rendered judgment against Carnation for actual and exemplary damages. The Court of Civil Appeals affirmed the judgment of the trial court. 588 S.W.2d 814. We affirm the judgment of the Court of Civil Appeals.

Borner was employed by Carnation for eighteen years from 1955 until his discharge on August 10, 1973. In October 1971, Borner was hit by a stack of falling crates and injured his right shoulder. In March 1973, he reinjured his shoulder when another stack of crates fell on him. Following his 1973 injury, Borner was absent from work until May 14, 1973, when he returned to work with a full release to "return to regular duty" from his physician, Dr. Donald Nowlin. Borner worked full time at his same job as a milk–loader from May 14, 1973 until his termination.

Subsequently Borner filed a worker's compensation claim for both injuries. The claim was settled by a compromise settlement agreement which was approved by the Industrial Accident Board on August 8, 1973. Carnation terminated Borner on August 10, 1973, stating that he was "Physically unable to perform assigned work." Borner had been back on the job since May 14, 1973, with no complaints filed by Carnation about his job performance.

While employed at Carnation, Borner was a member of a local Union. Carnation and the Union were parties to a collective bargaining agreement which contained a grievance and arbitration procedure. After his discharge, Borner reported the facts of his discharge to his Union which filed a grievance on his behalf with Carnation on August 14, 1973. When Carnation failed to respond, the Union wrote to Carnation on October 4 and December 4, 1973, requesting that Carnation comply with the grievance procedure and reply to Borner's grievance. Carnation responded in a letter dated January 2, 1974, which stated:

The company agrees for a period of one (1) year, effective from August 10, 1973, to allow Mr. Borner to return to work at

such time that in our opinion he is physically able to perform heavy duty work. After Borner received this letter, his Union representative told him to see his own lawyer. The Union did not seek arbitration of Borner's grievance and no further action was taken by the Union or Carnation.

In 1975 Borner filed this suit[1] claiming that his discharge violated Tex.Rev.Civ. Stat.Ann. art. 8307c which provides in pertinent part:

> Section 1. No person may discharge or in any manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.

> Section 2. A person who violates any provision of Section 1 of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation, and an employee discharged in violation of the Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.

A jury found that Carnation's discharge of Willie Borner violated Article 8307c, Section 1; that no settlement was reached on the grievance filed by Willie Borner; and that Carnation acted willfully and maliciously in discharging or in any other manner discriminating against Willie Borner. The jury awarded damages for lost wages between August 10, 1973 and the time of trial, for loss of wages Borner would probably receive in the future, and for retirement and other employee benefits Borner would have been entitled had he continued to work for Carnation. The jury also awarded exemplary damages. The trial court rendered judgment on the verdict for $100,-000.[2]

The questions presented by this case are whether:

(1) Borner's filing of a grievance precludes his filing an Article 8307c suit;

(2) future damages are recoverable under Article 8307c; and

(3) exemplary or punitive damages are recoverable under Article 8307c.

PRECLUSION OF ARTICLE 8307c SUIT

Section 8.4 of the collective bargaining agreement states:

> The Company and the Union *shall* meet promptly to settle any grievance filed. If they are unable to settle the written grievance within ten (10) calendar days, the *Union may invoke arbitration* and name its representative. Within five (5) days after the Union has named its representative, the Company shall name its representative, and the two shall attempt to settle the grievance, or to agree on an impartial arbitrator, within five (5) days. (emphasis added).

Under this section, Carnation and the Union were required to meet promptly to settle grievances. However, the Union had the sole discretion to invoke arbitration and neither Carnation nor Borner could participate in that decision.

■ Carnation contends that Borner's filing of a grievance pursuant to the collective bargaining agreement precludes his filing

---

1. Subsequently Carnation filed a cross action against and a motion for leave to make the Union a third party defendant. This cross action was based upon allegations that the Union violated its duty of fair representation under the National Labor Relations Act. This motion was granted and the entire case was removed to Federal Court. However, Borner's suit against Carnation was remanded to the District Court of the State of Texas.

2. In his first amended petition, Borner asked for $50,000 actual damages and $50,000 exemplary damages. The jury awarded $120,768 actual damages and $60,000 exemplary damages. However, the trial court denied Borner's trial amendment to increase the amount of damages pled, and rendered judgment for the lump-sum amount of $100,000. It should be noted that Rule 47, as amended effective January 1978, only requires a plaintiff to allege "that the damages sought exceed the minimum jurisdictional limits of the court...."

an Article 8307c suit based upon the same claim of wrongful discharge.[3] We disagree.

Carnation relies upon *Thompson v. Monsanto Company*, 559 S.W.2d 873 (Tex.Civ. App.—Houston [14th Dist.] 1977, no writ). In that case, Thompson was injured, awarded compensation and discharged. He filed a grievance with the Union which exercised its right to arbitrate the grievance. The arbitrator found that his discharge was justified. Subsequently Thompson filed an Article 8307c suit against his employer. The court held that an employee who had received an adverse binding arbitration award under a collective bargaining agreement is precluded from bringing suit in state court under Article 8307c on the same claim of wrongful discharge.

We find that Borner's position is distinguishable. Borner filed a grievance pursuant to the collective bargaining agreement. Once the grievance was filed, its processing was under the exclusive control of the Union. No arbitration procedure was invoked by the Union and no final and binding arbitration decision was obtained. No resolution of Borner's grievance was ever reached.

Carnation urges that the collective bargaining agreement must be strictly followed. However, it ignored the agreement when handling Borner's grievance. Carnation did not meet promptly with the Union to settle Borner's grievance. After the grievance was filed, Carnation did not respond for almost five months. In addition, Carnation did not follow its own reprimand procedure before terminating Borner.

Carnation also argues that a settlement was reached on Borner's grievance because the Union did not respond to Carnation's letter of January 2, 1974. However, the trial court submitted an issue concerning settlement of the grievance and the jury found that no settlement was reached.

The Legislature's purpose in enacting article 8307c was to protect persons who are entitled to benefits under the Worker's Compensation Law and to prevent them from being discharged by reason of taking steps to collect such benefits. *Texas Steel Company v. Douglas*, 533 S.W.2d 111, 115 (Tex.Civ.App.–Fort Worth 1976, writ ref'd n.r.e.). Precluding Borner from filing an Article 8307c suit under these circumstances would penalize him for attempting to use the grievance procedure, and would thwart the Legislature's purpose in enacting Article 8307c.

The remedies provided by the collective bargaining agreement and Article 8307c differ in that under the agreement Borner is limited to reinstatement and back pay while under Article 8307c Borner can also recover his "reasonable damages." Article 8307c was enacted to protect all employees–union and nonunion. The actions taken by Borner do not preclude his filing an Article 8307c suit based upon the same claim of wrongful discharge.

## FUTURE DAMAGES

■ Special Issue No. 4 provides:

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would reasonably and adequately compensate Willie Borner for damages sustained as a result of the discharge or discrimination, if any, by Carnation Company on or about August 10, 1973?

Consider the following elements of damage, if any, and none other:

a. Loss of wages in the past between August 10, 1973 and today.

b. Loss of wages, if any, which Willie Borner, will in reasonable probability incur in the future.

c. Retirement and other employee benefits to which Willie Borner would

---

3. In a Reply Brief Carnation stated:

"It is not the position of Carnation that the mere existence of a grievance procedure in a collective bargaining agreement is a bar to an Article 8307(c) cause of action. It is also not the position of Carnation that Borner or any other employee should necessarily be man-dated to utilize the grievance procedure of a collective bargaining agreement to resolve issues which may overlap into a statutory cause of action, e. g., an Article 8307(c) cause of action. It is also not the position of Carnation that Federal pre–emption automatically applies in these types of cases."

have been entitled had he continued to work for Carnation Company.

Answer in Dollars and Cents, if any, to each.

Answer: a. $24,768.00

b. $52,000.00

c. $44,000.00

Carnation's only objection made at trial [4] which has been preserved for appeal was that future damages are not recoverable under Article 8307c.

Article 8307c provides that an employee who has been wrongfully terminated may recover "reasonable damages suffered ... as a result of the violation ...." There is no restriction on the elements of damages which may be recovered.[5] However, reasonable certainty as to the amount of damages is required. *Bildon Farms, Inc. v. Ward County Water Improvement District No. 2*, 415 S.W.2d 890 (Tex.1967). Therefore, under Article 8307c an employee may recover for the loss of wages in the future, retirement and other benefits which are ascertainable with reasonable certainty and are the result of wrongful discharge.

## EXEMPLARY DAMAGES

The trial court submitted the following issue on exemplary damages:

What sum of money, if any, do you find from a preponderance of the evidence that the Plaintiff, Willie Borner, should be awarded against Defendant, Carnation Company, as exemplary damages?

"Exemplary Damages:" means an amount which you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount which you may have found as actual damages. You may consider compensation for inconvenience and the mental anguish suffered by Willie Borner.

Answer in dollars and cents, if any.

Answer: $60,000.00

Carnation urges for the first time on appeal that exemplary damages are not recoverable because they are not "suffered by an employee." We cannot consider this argument because included in the definition of "exemplary damages" was the element of "inconvenience and the mental anguish suffered by Willie Borner." This element was submitted without objection [6] and would be within the statutory definition of "damages suffered by an employee." Because there was no objection to the definition of "exemplary damages," which included the element of "inconvenience and men-

---

4. During the trial, Carnation's attorney stated the following objections concerning future damages:

> The defendant especially excepts and objects to part B in that it allows for a consideration and finding by a jury of loss of wages in the future.
> Defendant submits that this is not a proper instruction, based upon evidence that the plaintiff does not wish to be reinstated and that future damages are not recoverable under the Act.
> With regard to part C under Special Issue No. 4, the defendant objects and especially excepts on the basis that it allows for a calculation and determination by the jury of retirement and other employee benefits, to which plaintiff would have been entitled had he continued to work for Carnation Company.
> Defendant submits that such damages are not recoverable under Article 8307(c), and speculative and not capable of calculation, and constitutes an improper measure of damages in this cause.

5. Future damages were awarded in *Texas Steel Company v. Douglas*, 533 S.W.2d 111 (Tex.Civ. App.–Fort Worth 1976, writ ref'd n.r.e.). However, the question of the recovery of future damages under Article 8307c was not discussed.

6. At trial, Carnation made the following objection:

> "The Defendant objects and especially excepts to Issue No. 5 on the basis that it allows the jury to calculate and to find that Carnation Company, Defendant, may be liable for punitive damages in this cause.
> Defendant submits that such elements of damages are not properly recoverable under an 8307(c) action."

Rule 274, Tex.R.Civ.P., provides: "A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection." Carnation's objection is not sufficient to "point out distinctly" that the definition of "exemplary damages" was improper.

tal anguish," we hold that these damages are recoverable.[7]

The judgments of the courts below are affirmed.

DENTON, J., dissenting in which STEAKLEY, POPE and McGEE, JJ., join.

DENTON, Justice, dissenting.

I respectfully dissent. It is my opinion that the award of exemplary damages under Article 8307c, Tex.Rev.Civ.Stat.Ann., is improper. I would reverse the judgment of the court of civil appeals and remand the cause to the trial court for redetermination of damages.

Article 8307c is a statutory cause of action which protects the employee from wrongful discharge or other discrimination because he files a compensation claim. The "reasonable damages" language contained in Article 8307c is a statutory remedy which grows out of the employer–employee relationship. Exemplary damages may not be recovered for mere violation of a statute. *Jones v. Ross*, 141 Tex. 415, 173 S.W.2d 1022, 1024 (1943); *McDonough v. Zamora*, 338 S.W.2d 507, 514 (Tex.Civ.App.–San Antonio 1960, writ ref'd n. r. e.). Breach of the employment relationship gives rise to an action in contract, not in tort. As a general rule exemplary or punitive damages are not allowed for breach of contract. *A. L. Carter Lumber Co. v. Saide*, 140 Tex. 523, 168 S.W.2d 629, 631 (1943); *McDonough v. Zamora, supra* at 513. Even if the breach is malicious, intentional or capricious, exemplary damages may not be recovered unless there is a duty imposed by law or a distinct and independent tort is alleged and proved. *A. L. Carter Lumber Co. v. Saide, supra* at 631; *Mobile County Mut. Ins. Co. v. Jewell*, 555 S.W.2d 903, 912 (Tex.Civ.App.—El Paso 1977, writ ref'd n. r. e.); *McDonough v. Zamora, supra* at 513. I would hold that Borner's suit is a statutory cause of action arising out of the employment relationship and as such, will not support recovery of exemplary damages absent proof of an independent tort.

Section two of Article 8307c provides that an employer shall be liable for "reasonable damages suffered by an employee." Exemplary damages are not awarded to a plaintiff in order to compensate him, but rather to punish a wrongdoer and deter future acts of wrongful conduct. *Southern Cotton Press & Mfg. Co. v. Bradley*, 52 Tex. 587, 598–99 (1880); *Hays v. Houston G.N.R.R. Co.*, 46 Tex. 272, 280 (1876); *Pedernales Elec. Co–op., Inc. v. Schulz*, 583 S.W.2d 882, 884–85 (Tex.Civ.App.–Waco 1979, writ ref'd, n. r. e.); *Courtesy Pontiac, Inc. v. Ragsdale*, 532 S.W.2d 118, 122 (Tex.Civ. App.–Tyler 1975, writ ref'd n. r. e.); *—Bank of North America v. Bell*, 493 S.W.2d 633, 636 (Tex.Civ.App.–Houston [14th Dist.] 1973, no writ). In my opinion, "reasonable damages suffered by an employee," means compensatory damages and/or back wages, not exemplary damages.

The cases cited by Borner supporting recovery of exemplary damages are distinguishable. *K.W.S. Mfg. Co. v. McMahon*, 565 S.W.2d 368 (Tex.Civ.App.–Waco 1978, writ ref'd n. r. e.) was a suit for five percent of the stock of a corporation based on actionable fraud and for wrongful termination of an employment agreement. Exemplary damages were recovered; however, a distinct tort independent of the contract action was involved. The court of civil appeals recognized that exemplary damages cannot be recovered for breach of contract absent an independent tort. *Id.* at 372.

*Christopher v. General Computer Systems, Inc.*, 560 S.W.2d 698 (Tex.Civ.App.– Dallas 1977, writ ref'd n. r. e.) involved an action by the seller of computer equipment against a corporate buyer and its sole stockholder for misappropriation of trust funds. This was held to be a willful tort sufficient to support recovery of exemplary damages. *Id.* at 707.

*Pan American Petroleum Corp. v. Hardy*, 370 S.W.2d 904 (Tex.Civ.App.–Waco 1963,

---

7. We are not approving the definition of "exemplary damages" submitted by the trial court. A proper definition would not include the ele-

ment of "inconvenience and the mental anguish suffered by Willie Borner."

writ ref'd n. r. e.), was a suit to recover actual damages for failure to develop a gas lease as a prudent operator, and to recover exemplary damages for misrepresentations, falsifications, and concealment of material facts by the defendant. Both actual and exemplary damages were awarded. The court submitted a definition of exemplary damages which included "compensation for inconvenience, reasonable attorney fees, and other losses too remote to be considered under action damages." *Id.* at 908. This is similar to the definition submitted in the instant case. *Pan American*, however, involved an actionable tort. The present case does not.

*Allison v. Simmons*, 306 S.W.2d 206 (Tex. Civ.App.–Waco 1957, writ ref'd n.r.e.), was a usury case involving conspiracy, interlocking ownership, operation of a usurious brokerage device, and unreasonable harassment in collection methods. Actual and exemplary damages were recovered. The same definition of exemplary damages used in *Pan American, supra*, was submitted. *Id.* at 211. The court of civil appeals held the definition proper. Again, *Simmons* involved a distinct and independent tort action.

Although the majority specifically disapproved the trial court's definition of "exemplary damages," it allows recovery of exemplary damages because "there was no objection to the definition of 'exemplary damages.'" I strongly disagree. Carnation specifically objected at trial that such element of damages was not recoverable under Article 8307c, and, therefore, the issue should not have been submitted. Carnation's objection was specific and sufficient to preserve error on this point. Tex.R.Civ.P. 274; *Texas Employers' Ins. Ass'n v. Mallard*, 143 Tex. 77, 182 S.W.2d 1000, 1002 (1944).

I would reverse the judgment of the court of civil appeals and remand the cause to the trial court for proper determination of damages.